[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This case came to this court for a trial on the limited contested list. The plaintiff, whose maiden name was Beverly Edmundson, was married to John Carswell on June 24, 1978 at Bridgeport, Connecticut. The parties have resided in Connecticut for at least one year preceding the date of this complaint and, in fact, have lived here for a substantial period in excess of that time. The following minor children have been born of this marriage: Rashaad Elijah Carswell born January 10, 1981 and Jihan Iris Carswell born January 18, 1984. Neither of the parties is receiving any aid from the State of Connecticut or any part thereof.
This is a second marriage for the wife and a first marriage for the husband. The wife has a daughter, Kamili, from her first marriage. The husband has a child born before the parties were married. The wife's first marriage ended by the death of her first husband. CT Page 1580
The parties separated on May 15th of 1989. This marriage got off to a rocky start when an incident took place at the wedding reception which led to the wife being struck while in the automobile after the reception, her pocketbook was tugged at and she was kicked out of the car by her husband. This began a series of incidents involving physical altercations between the parties during the course of the marriage.
This court had the opportunity to review plaintiff's exhibit 6 and defendant's exhibit K which were introduced into evidence is full exhibits. All of exhibit 6 involves domestic disputes between the parties while they lived in Monroe, Connecticut. One of the police officers in a report of March 5, 1986, lists 28 incidents prior to and including the March 5, 1986 incident. The Monroe Police were regularly called to the premises.
The wife chronicles a March, 1979, incident when she was punched in the right eye and it was swollen up, as she described it, to the size of a teacup with excruciating pain. She went to an ophthalmologist and it took two months to heal. Thereafter she had residual problems. In September of 1979 she indicates she was struck and gouged and there is a scar on her left eye which she pointed out to the court. There was another incident in the spring of 1980 where she had a black eye while she attending University of Bridgeport Law School and was embarrassed because two of her classmates that she was close to had asked her about the black eye and she had to lie about its origin.
The husband admits he struck her but says he never punched her. He says he slapped her. The wife claimed at one point that he had pulled her braided hair and ripped some of the hair out at the roots. He said that the Afro American hairstyle that she had at the time had beads and that could have caused injury to her without his physical assault.
It appears that the dispute between the parties on physical assaults was the number, the magnitude and the causes.
The wife's daughter, Kamili, who was a compelling and truthful witness, talked about the assaults by the husband on her and her mother.
The court finds that the cause of the breakdown of this marriage was the physical violence inflicted on the wife and her daughter by the husband, John.
This is a marriage that initially had all of the earmarks of potential success. The wife had worked as a paralegal and was CT Page 1581 not afraid of hard work. She had worked in the Bridgeport Hospital and as a private tutor and occasionally did a cleaning job. The husband is a successful salesperson for a major drug company. They moved to suburbia in Monroe and wife should have been good for them thereafter, but it was not.
There is conflicting testimony as to how all of the assets were acquired. It appears that the testimony of the wife is the more credible testimony concerning the assets.
The Bridgeport condominium was owned by the wife. It was sold for $62,500.00 in approximately August of 1979. There was approximately a $24,000.00 mortgage so the net was approximately $38,500.00. This went into the purchased the Monroe Moose Hill Road property. That property was purchased in August of 1979, for approximately $105,000.00 and an approximate $78,000.00 mortgage was put on. The cash that went into the Monroe house was from the wife's proceeds from sale of the condominium.
The purchase of 849 Old Town Road, Bridgeport, was done in 1986. The purchase price was approximately $52,000.00 of which approximately $50,000.00 was financed with a $15,000.00 mortgage from the seller and a $35,000.00 mortgage from the People's Savings Bank. The wife knew the seller who so the property to her. The husband presently resides in those premises.
The property at 1235-39 Kossuth Street, Bridgeport, was purchased for approximately $187,500.00. This was placed solely in the wife's name. This is a residential neighborhood but it is apparently across from Jim's Auto Body. The purchase $187,500.00 and a $150,000.00 mortgage was placed on the premises. Because the property was in disrepair as a result of a fire, the wife was given some credits for repairs. The property needed substantial work and the husband did nothing to assist the wife in the improvement of that property. The property apparently presently has decreased in value and is only $120,000.00 based on the wife's testimony. There is an equity of a negative $30,000.00.
The property at 924 Noble Avenue, Bridgeport, was purchased for $100,000.00 without any cash from the parties. There was a $75,000.00 first mortgage and a $25,000.00 second mortgage back from the seller. This property was placed solely in the wife's name and is presently used as her office. An appraisal, which is defendant's exhibit 10, indicates that the value in April of 1988 was $135,000.00. The wife shows the value of the property presently as $90,000.00 with a $70,000.00 mortgage making an equity of $20,000.00. CT Page 1582
The record indicates that the husband had difficulty in obtaining the wife's financial information. Defendant's exhibits A, B, C, D and E all reflect attempts to find out financial information. This has been further complicated by the fact that defendant's exhibits I and J reflect tax returns filed by the parties for 1986 and 1987. The wife had filed tax returns for the years 1988, 1989 and 1990 and does not have information as to what her gross earnings were for 1991.
That is clear, however, is the $600.00 per week net income, not include substantial expenses that are paid by the business for the benefit of the wife, included among that is the cost for the wife's and daughter's automobile of approximately $900.00 per month or $10,800.00 per year on top of the $31,200.00 already earned. In 1987 the wife had gross sales at her business of $102,000.00. It appears at one point she had gross income of approximately $126,000.00 from business. Her law firm sounds like a successful operation. She has three part time secretaries, one full time secretary, a full time employee that she pays $600.00 per week to assist her as an attorney. The car payment of $900.00 a month is paid from the business. The mortgage and taxes of $1,300.00 is paid from the business. She pays for dictating equipment, phone, lease, entertainment, Christmas parties, malpractice insurance, automobile insurance, gasoline, repairs, Fax, computer, the second mortgage, phone bill, advertising, electricity, books and the like from her business. It appears as a minimum that the wife earns $42,000.00.
The testimony of the wife substantiates that the rental properties approximately break even as it relates to income and expenses, and the court has imputed no net income to her. As far as the foster care is concerned, the court is satisfied that the expenses are in the approximate sum, of the income received and has imputed no net income to the wife.
It is clear that the husband worked throughout the marriage and was a substantial earner, and that the wife, from the time she began her law practice contributed substantially to the acquisition and preservation of the assets of the parties. The wife stayed in the marriage, she testified, because of the, young children in hopes the marriage would get better. Although the husband stated there were good times in the marriage, very little alimony was elicited at the trial concerning those good times. The husband testified that the marriage was in a constant state of bicker and that, despite counselling, the marriage was not able to be saved.
The court finds it has jurisdiction. The court has listened to the parties and listened to their witnesses and CT Page 1583 reviewed all the exhibits in the case. In addition, the court has taken into consideration all the criteria set forth in Attorney General Statutes 46b-81, the assignment of property and transfer of title statute, 46b-82, the alimony statute,46b-62, the attorney's fees statute, and 46b-84, the child support statute, and all other relevant statutes and, in addition, the court has reviewed the financial affidavits of the parties listened to the arguments of counsel. Accordingly, the orders as follows:
 1. The marriage is dissolved on the grounds of irretrievable breakdown.
 2. By agreement of the parties, the court adopts the recommendation of the Family Relations officer, as shown on plaintiff's exhibit A, concerning custody and visitation of the minor children and orders as follows:
 a. The parties will share joint legal custody of the two minor children and the children's primary legal residence will remain with their mother.
 b. Mr. Carswell will have his children at home three weekends per month commencing Thursday after school until Sunday at 8:00 p.m. One weekend per month be reserved for Mrs. Carswell to have the children for her own activities. The specific plan of weekends will be arranged by the parties and scheduled around Mr. Carswell's employment.
 c. In the week prior to Mrs. Carswell's weekend with her children, Mr. Carswell will have two midweek visits with his children commencing after school and returning no later than 9:00 p.m. depending upon their activities. The exact days will be unspecified and arranged by the parties at the beginning of each week., Mr. Carswell will not exercise midweek visits on any civic or religious holiday as agreed to in number four.
 d. Holiday visitation will be as follows: any holiday occurring from Thursday afternoon to Sundays at 8:00 p.m. on Mr. Carswell's scheduled weekend shall go to him. Any holiday that falls outside the period of Thursday afternoon to Sunday at 8:00 p.m. or Mrs. Carswell's weekend shall go to her. While this will allow most holidays and every civic holiday occurring on a Monday to be with Mrs. Carswell, the parties are aware of this and agree to this plan. CT Page 1584
 This agreement of the parties is made an order of the court.
 3. The husband's income picture is clear. The wife's income is not so clear for the reasons previously set forth. However what is clear is that she can support herself without the husband's help. Accordingly, no alimony is awarded to either party.
 4. The husband shall pay to the wife the sum of $130.00 per week per child as child support (total child support per week of $260.00) payable on the day after the husband is paid. The court finds that this amount meets the child support guidelines. The husband's net after adding back in the credit union loan is $636.00.
 5. Since it is clear that the husband canceled the better medical insurance for the benefit of the children, apparently because of a mistake on his part, he is ordered to secure that insurance for the benefit of the minor children as it existed prior to January, 1991, so that that medical, dental and hospitalization for the two minor children shall be the plan which paid approximately 100 per cent of all prescriptions, 80 per cent of all doctors, 90 per cent of the hospital, and $250.00 per person deductible. The new policy had a $2,000.00 deductible approximately and was $25.00 per prescription deductible. In the event the husband is able to obtain the old insurance, then he shall pay in addition 50 per cent of the unreimbursed medical and dental expenses.
 In the event that he is not able to obtain that insurance, then he shall pay as though the old plan were in existence, all of the uncovered amounts, so that, by way of example, the old plan covered 100 per cent of prescriptions, he would pay all the prescription expenses and the like.
 6. The wife shall be afforded the right to the COBRA coverage for medical, dental and hospitalization insurance at her expense through the defendant husband as it existed prior to January 1, 1991. The husband shall do whatever is necessary to permit the wife to avail herself of said coverage.
 7. The wife shall be the sole owner of the property known as 321 Moose Hill Road, Monroe, Connecticut. The court finds that, based on the appraisal of the plaintiff as exhibit 5, the value in January of 1990 was $302,000.00. The husband has set forth his opinion of value at $300,000.00. The wife has set forth her value of $250,000.00. The court CT Page 1585 finds that the most credible value is the sum of $300,000.00. The equity in this house is approximately $121,000.00.
 The husband shall execute any and all documents necessary to transfer the property to the wife including but not limited to a quitclaim deed. In the event the husband fails to quitclaim the property within thirty days of the date of this decision the transfer shall be by operation of law pursuant to 46b-81b. The wife shall hold the husband harmless on any mortgages thereon.
 8. The husband shall retain the 849 Old Town Road, Bridgeport, Connecticut property and the time share in Orlando, Florida, free and clear of any claim of the wife. He shall be responsible for any and all encumbrances and arrearages thereon. The wife shall execute any and all necessary documents to effectuate said transfers. In the event she fails to do so within thirty days of the date of this decision the transfer shall take place by operation of law pursuant to 46b-81 (b). The husband shall indemnify the wife from any liabilities as to said properties.
 The court finds that the fair value of the 849 Old Town Road, Bridgeport, Connecticut property is $110,000.00. The appraisal in January of 1990 showed it to be $134,000.00. The wife shows it as $100,000.00. There is an equity of $65,000.00 in this property.
 9. The premises at 924 Noble Avenue, Bridgeport, Connecticut and the premises at 1235-39 Kossuth Street, Bridgeport, Connecticut, are presently in the wife's name. No reason to interfere with that current ownership situation has been established at trial. The court terminates any legal or equitable rights the husband may have in those premises and they shall be the wife's sole and exclusive property.
 The court finds that the value of the 924 Noble Avenue, Bridgeport, property is $90,000.00 as set forth on the wife's affidavit. There has been no contrary testimony offered to establish value other than an estimate of value of March 21, 1988, of $135,500.00 which the court finds to be without substantial probative value based on its age.
 The court further finds that the value of the premises known as 1235-39 Kossuth Street, Bridgeport, Connecticut, is $120,000.00 based on the wife's uncontradicted testimony as to value. There is presently a net negative valuation of $30,000.00 based on a mortgage of $150,000.00. CT Page 1586
10. Both parties shall retain any and all personal property in their possession. The husband has failed to sustain his burden of proof for claims of ownership for the two large oriental rugs, the two large oriental screens and the two brass swans.
11. The party shall be responsible for their respective outstanding debts and tax liabilities as shown on their respective affidavits dated January 14 by the wife and January 14 by the husband. This court will not address the question of joint tax returns or otherwise between the parties other than to suggest to both of them that it would be in their best interests if they cooperated with each other to see what is in the best financial interests of the parties in order to maximize tax returns and to minimize amounts paid. This court will not enter any order requiring anyone to file tax returns in any fashion whatsoever.
12. Each party shall retain the motor vehicles presently in their names.
13. The husband shall maintain life insurance on his life in the amount: of $53,000.00 per child naming each child the irrevocable beneficiary and shall provide evidence of the same being in effect within sixty (60) days of the date hereof. Said insurance to remain until the children have reached their majority.
14. In the event there is any outstanding order of child support or other payments ordered pendente lite at the time, or this decree said arrearage shall be paid in full within ten (10) days of the date of this degree.
15. The husband is ordered not to enter the premises at 321 Moose Hill Road, Monroe, Connecticut, and 924 Noble Avenue, Bridgeport, Connecticut, and 1235-39 Kossuth Street, Bridgeport, Connecticut, as they are the sole and exclusive property of the wife and she is given exclusive possession.
16. An order is entered enjoining the wife from entering the premises known as 849 Old Town Road, Bridgeport, Connecticut, as it is the sole and exclusive property of the husband and he is given exclusive possession.
17. The husband's pension as shown on plaintiff's exhibit one shall be maintained by the husband free and clear of any claims of the wife.
18. The court has reviewed the statutory provisions concerning attorney's fees and finds that, although the affidavit CT Page 1587 regarding counsel fees for the wife reflects a fee that is fair and reasonable under all the circumstances, it is clear that the husband does not have the financial wherewithal to pay the entire bill. Accordingly, the husband is ordered to pay $2,500.00 towards the wife's attorney's fees when he sells the premises known as 849 Old Town Road, Bridgeport, Connecticut, or two years from the date hereof, whichever event first occurs. No attorney's fees are awarded to the husband.
EDWARD R. KARAZIN, JR., JUDGE